478 P.2d 551

**Maxine O. LAHR, Plaintiff-Appellant,**

**v.**

**Melvin A. LAHR, Defendant-Appellee.**

**No. 9011.**

Supreme Court of New Mexico.

Dec. 28, 1970.

Nordhaus & Moses, James F. Beckley, Albuquerque, for plaintiff-appellant.

Turner W. Branch, Bill Chappell, Jr., Albuquerque, for defendant-appellee.

## OPINION

SISK, Justice.

Plaintiff appeals from the trial court's division of community property in an action where both parties sought a divorce and an equitable division of such property. Plaintiff alleges lack of substantial evidence to support the trial court's refusal to reimburse her for expenditures allegedly made from her separate property for the benefit of the community estate, and also alleges that there was no substantial evidence to support the values established by the trial court as to two pieces of community real estate.

In determining whether findings of fact are supported by substantial evidence we resolve all disputed facts and indulge in all reasonable inferences in favor of the successful party and disregard inferences to the contrary. Samora v. Bradford, 81 N. M. 205, 465 P.2d 88 (1970); Rutledge v. Johnson, 81 N.M. 217, 465 P.2d 274 (1970). We presume the correctness of the judgment of the trial court who had the advantage of evaluating the demeanor of the parties and of the witnesses. Farmers and Stockmens Bank of Clayton v. Morrow, 81 N.M. 678, 472 P.2d 643 (1970); Poteet v. Poteet, 45 N.M. 214, 114 P.2d 91 (1941).

■ In her first point plaintiff contends only that there is no substantial evidence to support the trial court's refusal to find, as requested by her, that she should be reimbursed from the community estate for certain expenditures made from her separate funds, and states that such refusal is tantamount to making a contradictory finding. Although plaintiff introduced an itemized list of funds alleged to have been expended from her separate property for community purposes, there is substantial evidence to the contrary. The testimony of the plaintiff and of the defendant was conflicting, with the defendant asserting that most of such expenditures were from funds given by him to her, and he further indicated that his disbursements to her over the years offset any expenditures she may have made on behalf of the community. Nor were the cancelled checks unequivocally tied to community use. There was evidence from the defendant, and even in some instances from the testimony of the plaintiff, of the alternative possibilities that such funds were used for the maintenance of the plaintiff's separate property or for the benefit of various of her relatives. Having such conflicting evidence before it on the issue of use of certain of the plaintiff's funds for community or non-community purposes, we hold that there is substantial evidence to support the trial court's refusal to adopt plaintiff's requested findings.

Plaintiff's second point asserts that the trial court erred in establishing the value of two pieces of community real estate, which it included in its division between plaintiff and defendant, and which we will refer to as the Princeton property and the Silver property. Plaintiff objects that the written report of an appraiser, Mr. Eckert, was inadmissible hearsay because it contained the conclusions of an out-of-court declarant offered to prove the truth of the matter asserted; and that the deposition testimony of an accountant, Mr. Cassell, was in effect inadmissible as opinion testimony, and as incompetent testimony timely objected to as hearsay.

Actually, no contention is made that the accountant was qualified as an expert appraiser, or even that he made an independent appraisal. Nor is it contended that the expert appraiser's valuations by themselves were admissible, he never having been subjected to examination or cross-examination as to the values he placed on these properties.

■■ But with regard to the Princeton property, there is other evidence from which the trial court could have arrived at its valuation. Plaintiff acknowledges that an owner of property may always testify as to its value, and as to the value of the Princeton property the defendant made it very clear from his own testimony that he did not think it was worth more than $20,000. This testimony alone constitutes substantial evidence to support the trial court's valuation at that figure. Nor should this opinion of value be held inadmissible as a self-serving statement of the defendant. At the time of his testimony neither he nor the plaintiff could have been certain which property the court would award to which party. We hold that the trial court did not abuse its discretion and did not err in establishing the value of the Princeton property at $20,000.

As to the Silver property, however, the facts are different. The defendant did not testify as to his own personal opinion of

valuation. The accountant testified that the valuation of $32,500 used in the proposal prepared by him and adopted by the court was taken directly from the Eckert appraisal. Defendant argues that this amount was also the value placed on the property by him. The accountant in his deposition does indicate that the proposal which included this valuation was an offer made by the defendant. But the defendant himself was not questioned as to his opinion of the value of this property, and hearsay objections to the admission of the accountant's deposition testimony and the appraiser's report were timely and properly made.

Defendant argues that even after excluding the conclusions of the accountant and the hearsay real estate appraisals of the expert appraiser, the accountant's deposition statements as to what are claimed to be the defendant's personal opinion as to value were properly admitted. We must disagree. Even if these values were those of the defendant as well as of the appraiser, the accountant's deposition testimony remains hearsay because it is the testimony of a witness as to out-of-court statements of a declarant who was not a witness as to that specific subject matter. Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640 (1942).

The only admissible evidence as to the value of the Silver property, then, was the $27,000 valuation of the plaintiff. Was the trial court therefore required to accept this valuation in making its allocation of the community property? We hold that it was. The applicable rules when considering uncontradicted testimony have been well settled in New Mexico since Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940), where this court said:

"From the New Mexico cases discussed, we believe the rule in this jurisdiction to be that the testimony of a witness, whether interested or disinterested, cannot arbitrarily be disregarded by the trier of the facts; but it cannot be said that the trier of facts has acted arbitrarily in disregarding such testimony, although not directly contradicted, whenever any of the following matters appear from the record:

"(a) That the witness is impeached by direct evidence of his lack of veracity or of his bad moral character, or by some other legal method of impeachment.

"(b) That the testimony is equivocal or contains inherent improbabilities.

"(c) That there are suspicious circumstances surrounding the transaction testified to.

"(d) That legitimate inferences may be drawn from the facts and circumstances of the case that contradict or cast reasonable doubt upon the truth or accuracy of the oral testimony."

Subsequent cases following these rules include Aragon v. Boyd, 80 N.M. 14, 450 P. 2d 614 (1969), and Frederick v. Younger Van Lines, 74 N.M. 320, 393 P.2d 438 (1964).

There is nothing in the record in our case from which we can say that the plaintiff was impeached, and in fact, on this issue concerning her personal opinion of the value of the Silver property, she was not cross-examined. Nor can we fairly say from the record that her testimony was equivocal or contained inherent improbabilities, that suspicious circumstances surrounded her testimony as to this valuation, or that legitimate inferences could be drawn which cast doubt on the truth or accuracy of her testimony. She, as an owner, was entitled to give her opinion as to the value of the property. She did so, and there is nothing to indicate, just as in the case of the defendant's opinion as to the valuation of the Princeton property, that it was not her honest and best opinion of the actual value of the property. This being the only admissible evidence of such value, it was reversible error, under the above-cited authorities, not to accept such valuation in making the allocation of the community property.

226

The judgment is affirmed except as to the valuation of the Silver property. Accordingly, the cause is remanded with instructions to value such property at $27,000 and to modify or amend the judgment as to the allocations of community property contained therein.

It is so ordered.

COMPTON, C. J., and McKENNA, J., concur.