This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**SAMIR KASSICIEH,**

    Petitioner-Appellee,

v.                                                                  **NO. 30,490**

**EILEEN KASSICIEH,**
**n/k/a EILEEN MARIE SAYEGH,**

    Respondent-Appellant.


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Angela J. Jewell, District Judge**

Assed & Associates, P.C.
Richard J. Moran
Albuquerque, NM

for Appellee

Law Offices of Lynda Latta, LLC
Lynda Latta
Linda L. Ellison
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Wife appeals the district court's order dissolving her marriage with Husband and dividing their property. Wife raises eight issues on appeal that primarily address the sufficiency of the evidence to support the district court's conclusions that certain debts were community property and certain assets were Husband's sole and separate property. We affirm the judgment of the district court.

**BACKGROUND**

Wife and Husband were married on July 2, 2006. Husband sought dissolution of the marriage on August 22, 2008. After taking testimony, admitting evidence, and hearing argument, the district court issued seventy-four findings of fact and twenty-one conclusions of law related to the division of assets and liabilities of the parties, both separate and the community. The district court incorporated its findings of fact and conclusions of law into the judgment and final decree of dissolution of marriage.

We shall only address the distribution of assets and liabilities that are relevant to this appeal. Husband's medical practice, the entire Vulcan Ventures I (Vulcan I) investment asset, and Husband's contribution to the Vulcan Ventures II (Vulcan II) investment asset were awarded to Husband as his sole and separate assets. Wife was awarded her separate percentage contribution to Vulcan II less the percentage interest

in Vulcan II that the district court concluded Wife's brothers had purchased from her. With the exception of a $30,000 loan from Husband's brother, which the district court determined was Husband's sole and separate debt, the district court found that the gambling debts incurred during the marriage were community debts accumulated and owed jointly by both parties. The gambling debts included a $5,000 balance on a Southwest Airlines Visa. The district court also explained that neither party was entitled to reimbursement for their individual separate contributions to the accumulation and payment of community gambling debts because both parties used separate and community property to fund their gambling habits. Finally, the district court concluded that Wife was not entitled to any additional interim division of income payments and equalized the payments that had already been made to Wife.

Wife filed a timely appeal with this Court asking for reversal of the district court's judgment. She then filed a motion to set aside the district court's judgment for fraud. Wife claims the gambling debt was accumulated solely by Husband and requests reimbursement for the separate property she contributed to the accumulation and payment of the gambling debts. Wife also claims that the district court's findings regarding the Vulcan I and II investments were not supported by substantial evidence and that the district court erred in equalizing the interim division of income payments. Additionally, if successful in her appeal, Wife requests a lien against Husband's

3

medical practice for monies owed to her. Our review of the record further indicates that Wife is seeking a remand to the district court for the limited purpose of hearing her motion to set aside the judgment.

**DISCUSSION**

**I.      Standard of Review**

The district court entered extensive findings of fact and conclusions of law in support of its judgment. We review the district court's equitable distribution of assets and liabilities for an abuse of discretion. *Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285. However, Wife asks this Court to review the district court's characterization of separate and community property de novo. *See id.* Wife's statement of the standard of review is correct insofar as any legal questions raised by the classification of debts and property as either separate or belonging to the community. *See* NMSA 1978, § 40-3-8 (1990) (defining separate and community property); § 40-3-9 (1983) (defining separate and community debts); *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16 ("we review questions of law de novo."). But the issues raised by Wife on appeal involve only evidentiary challenges to the district court's rulings. Thus, we shall apply a substantial evidence standard of review. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 25, 146 N.M. 473, 212 P.3d 361 (applying a substantial evidence standard where no legal

4

questions remain); *see also Corley v. Corley*, 92 N.M. 716, 718, 594 P.2d 1172, 1174 (1979); *Zemke v. Zemke*, 116 N.M. 114, 118, 860 P.2d 756, 760 (Ct. App. 1993).

"Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In reviewing a substantial evidence claim, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.*; *Lopez v. Adams*, 116 N.M. 757, 758, 867 P.2d 427, 428 (Ct. App. 1993) ("It is for the [district] court to weigh the testimony, determine the credibility of witnesses, reconcile inconsistent statements and determine where the truth lies."). As a result, we will "resolve[] all disputes of [the] facts in favor of the successful party and indulge[ ] all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

**I.     The Gambling Debts**

We first address Wife's contention that the district court erred in concluding that the gambling debts acquired during the marriage were community debts. Wife argues that the district court should have determined that the gambling debts were the

sole and separate debts of Husband. *See* NMSA 1978, § 40-3-9.1 (1997) ("A gambling debt incurred by a married person as a result of legal gambling is a separate debt of the spouse incurring the debt."). Wife does not challenge the district court's now conclusive legal finding that "common sense dictates that [the purpose of Section 40-3-9.1] is to protect an innocent spouse, who does not gamble, and is completely unaware of community debts incurred, as a result of gambling[.]" *See Cordova v. Broadbent*, 107 N.M. 215, 216, 755 P.2d 59, 60 (1988) ("Unchallenged [district] court findings and conclusions are binding on appeal."). Instead, Wife challenges the sufficiency of the evidence to support the district court's conclusion that she was not an innocent spouse as protected by Section 40-3-9.1.

There is ample evidence in the record to support the finding that Wife participated in gambling activities and was aware of the extent of Husband's gambling. Husband testified that the parties would gamble locally three to four times a month, and that they would travel together to gamble in Las Vegas, Nevada every six or eight weeks. Husband also explained that Wife appeared very happy when she was gambling, shared the idea to go to the casino to gamble with him, and gambled approximately the same amount of money as he did. Husband also told the district court that Wife would mostly play slot machines and would generally spend between $500 and $2,500 per bet. Both parties would obtain the money to gamble through

cash on hand, ATM machines, credit card withdrawals, and cashing checks. He also described a specific instance of Wife's gambling activities. Husband testified that he won $3,000 playing baccarat, and Wife immediately grabbed the winnings, played them at the slot machines, and lost them.

Testimony from Husband's brother and an executive host for Caesar's Palace (Castaldo) corroborated Husband's testimony. Husband's brother and Castaldo had both observed Wife gamble with Husband and place bets at high stakes slot machines. In addition, Castaldo remarked that Wife appeared enthusiastic to gamble and would do so "all night" long. Castaldo also explained that he had previously overheard Husband discuss his financial concerns with Wife, and that he had seen Wife gamble with money loaned to the parties by Caesar's Palace.

The district court also heard contradicting testimony from both Wife and Husband's ex-wife regarding Husband's gambling habits and their lack of knowledge of the extent of gambling throughout the course of each of their respective marriages. After hearing this conflicting testimony from the parties, the district court rejected Wife's version of gambling events. It found Wife's testimony "incredible" that she was unaware of the extent of Husband's gambling, or that he gambled much more than she did. "All of the testimony in this case suggests that both parties gambled; were aware of each other's gambling habits; supported each other's gambling; many

times gambled together, and used each other's gambling cards in some instances." As a result, the district court found that Wife contributed to the gambling habits of the parties voluntarily and without duress and concluded that gambling debts owed by the parties were community debts.

Wife's argument on appeal essentially states that the district court should have resolved the parties' conflicting assertions in her favor. But we defer to the fact finder, here, the district court, to resolve the conflicts in the evidence, to weigh the facts, and to determine the credibility of the witnesses. *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33 ("[W]hen there is a conflict in the testimony, we defer to the trier of fact."); *State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct. App. 1992) ("It was for the [district] court as fact[]finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay."). The district court was in the best position to evaluate the evidence presented and the credibility of the parties, and the record reflects that Wife was not an innocent spouse with regard to the gambling debts. Substantial evidence supports the district court's findings that the parties both participated in the gambling activities and each voluntarily used separate and community funds to support their gambling habits. We, therefore, affirm the district court's classification of the gambling debts as community debts.

Wife also argues on appeal that the district court should have characterized the balances owed on a Southwest Airlines and Schwab Visa credit cards as the sole and separate debt of Husband. However, Wife concedes that these balances are included as part of the gambling debts. Because we conclude that substantial evidence supports the district court's characterization of gambling debts as community debts, we affirm the district court's characterization of both of these Visa credit card debts.

## II.    The Vulcan I Investment

The district court awarded the Vulcan I investment asset to Husband as his sole and separate property. Wife appeals this award, arguing that Husband failed to trace his Vulcan I investment to separate funds and the evidence was insufficient to support the district court's finding that Vulcan I was purchased prior to the marriage. "In New Mexico, property takes its status as community or separate property at the time and by the manner of its acquisition." *Zemke*, 116 N.M. at 119, 860 P.2d at 761 (internal quotation marks and citations omitted). Property acquired prior to marriage is presumed to be separate property, whereas property acquired during a marriage is presumed to belong to the community. Section 40-3-8(A)(1) and (B). Wife asserts that Husband's failure to trace his investment in Vulcan I, paired with the dates of the deeds and purchase agreements, reveals that Vulcan I was a community asset purchased during the marriage.

Neither party tendered any evidence to trace the funds used to purchase Vulcan I or the time at which Vulcan I was acquired. However, Husband presented ample evidence to support his contention that he acquired the property with separate funds prior to his marriage. Husband's brother, a managing partner in Vulcan I, testified that Wife never invested in Vulcan I and that the investment was funded prior to the marriage between the parties. This Court will defer to the district court's finding that this testimony was credible. *Roybal*, 115 N.M. at 30, 846 P.2d at 336. Moreover, Husband's brother explained that although Vulcan I became an LLC entity after the marriage, it was initially funded from March 2006 through July 2006. Based on this testimony, the district court was entitled to make the reasonable inference that, given the close proximity in time between the marriage and Husband's investment in Vulcan I, his sole and separate funds were used to make the investment. *Samora v. Bradford*, 81 N.M. 205, 207, 465 P.2d 88, 90 (Ct. App. 1970).

On appeal, it was Wife's duty to present the evidence in the light most favorable to support the district court's findings, and then demonstrate why the evidence failed to support the findings. *Jurado v. Jurado*, 119 N.M. 522, 526, 892 P.2d 969, 973 (Ct. App. 1995). Although Wife points this Court to deeds admitted into evidence, she has not provided any arguments to rebut the conclusion that Husband possessed equitable title to Vulcan I prior to the marriage. *See Michaluk v.*

*Burke*, 105 N.M. 670, 677, 735 P.2d 1176, 1183 (Ct. App. 1987) (holding that property was separate property of a husband where he had equitable title to property prior to his marriage but received the deed for the property during the marriage). In addition, Wife has not provided this Court with any other evidence or arguments as to why Husband's brother's testimony was insufficient to prove the time and manner of Vulcan I's acquisition, or to any evidence that indicates that community funds were used to purchase Vulcan I. *See* Rule 12-213(A)(4) NMRA; *see also Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 28, 135 N.M. 607, 92 P.3d 53 (explaining that a party challenging a finding for lack of substantial evidence must refer to "all of the evidence, both favorable and unfavorable, followed by an explanation of why the unfavorable evidence does not amount to substantial evidence, such as is necessary to inform both the appellee and the Court of the true nature of the appellant's arguments").

Wife merely asserts to this Court that her factual position was correct and the district court should have adopted it. *See Lahr v. Lahr*, 82 N.M. 223, 224, 478 P.2d 551, 552 (1970) ("We presume the correctness of the judgment of the [district] court who had the advantage of evaluating the demeanor of the parties and of the witnesses."). In such a situation, the district court was free to accept Husband's evidence and reject Wife's evidence. *Zemke*, 116 N.M. at 120, 860 P.2d at 762; *Jay*

11

*Walton Enters., Inc. v. Rio Grande Oil Co.*, 106 N.M. 55, 59, 738 P.2d 927, 932 (Ct. App. 1987) ("Where evidence is conflicting and the court adopts findings on a disputed issue, the fact that there may have been other evidence upon which the court could have adopted a different finding does not constitute error."). Wife has failed to meet her burden. We thus conclude that substantial evidence supported the district court's determination that Vulcan I was acquired solely by Husband prior to entering in the marriage, and affirm its conclusion that Vulcan I was Husband's sole and separate asset.

**III.    Reimbursement of Wife's Separate Funds**

The district court concluded that neither party was entitled to reimbursement for their sole and separate contributions to the gambling habits and debts incurred during the marriage. It also refused to reimburse Wife for any separate money that may have been used to contribute to Husband's investment in Vulcan I. Wife asks this Court to reverse these conclusions and reimburse her for money taken from her separate account to pay off a portion of the gambling debt and for money that she asserts was wrongfully taken from her separate account by Husband and invested in Vulcan I.

"Although mathematic exactitude is not required in the division of community assets, it is the duty of the district courts, upon dissolution of a marriage, to divide as

equally as possible the property of the community." *Bustos v. Bustos*, 100 N.M. 556, 558, 673 P.2d 1289, 1291 (1983). To perform this duty, the district court has broad discretion to allocate property in a manner that "is fair under all the circumstances." *Fernandez v. Fernandez*, 111 N.M. 442, 444, 806 P.2d 582, 584 (Ct. App. 1991); *see also Arnold*, 2003-NMCA-114, ¶ 6. We have already concluded that substantial evidence supported the district court's classification of the gambling debt, and therefore, are not persuaded by Wife's argument that the district court abused its discretion in refusing to reimburse Wife for her sole and separate contributions to the gambling habits and debts incurred by the parties. The evidence presented at trial shows that both parties used separate funds to pay off the gambling debts of the parties. The allegations regarding Wife's participation in gambling activities and the voluntary contribution of her separate assets to fund such activities were conflicting. The district court chose to resolve such conflicts in favor of Husband. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12 (stating that it is not our role to "reweigh the evidence nor substitute our judgment for that of the fact finder").

We next address Wife's argument that she was entitled to reimbursement for money used to invest in Vulcan I that Husband allegedly coerced Wife to withdraw from her separate account. Wife essentially argues that the district court should have credited the check for $19,000 written from her account as conclusive on this issue.

However, the district court recognized the existence of this check, but refused to "go back into the marriage and second[-]guess community expenditures." This refusal to speculate regarding the use of the $19,000 check stemmed from the conflicting testimony heard from the parties. Wife asserted that she believed the money was going to be used to purchase land. Husband asserted that the money was loaned to a partner in Vulcan I ventures and was later paid back to Husband and Wife's joint account. To resolve this conflict, the district court explained that, "[j]udging [Wife's] demeanor and credibility during her testimony, the [c]ourt finds it unlikely that [Wife] could be coerced into spending her money, except as she so desired." Again, we will not reweigh the evidence or substitute our own judgment for that of the district court. *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

The district court had broad discretion to determine whether Wife was entitled to any reimbursement. Wife did not describe the overall division of property and debt between the parties, explain why it was inequitable, or otherwise demonstrate any error on the part of the district court. Wife has not pointed this Court to any evidence, other than her own testimony, to corroborate her assertion that this money was wrongfully taken from her separate account and invested in Vulcan I. Nor has she attempted to discredit the conflicting evidence Husband presented to the district court. *See In re Termination of Parental Rights of Wayne R.N.*, 107 N.M. 341, 345, 757 P.2d

14

1333, 1337 (Ct. App. 1988) ("It is for the [district] court to weigh the evidence, resolve conflicts in the testimony, and determine where the truth lies. On appeal, this [C]ourt may not substitute its judgment for that of the [district] court."). In the absence of clearly demonstrated error, the resolution of factual disputes regarding any reimbursement of funds is within the district court's broad discretion, and this Court will not disturb it on appeal. *Buckingham*, 1998-NMCA-012, ¶ 10.

**IV. The Vulcan II Investment**

The district court concluded that Husband and Wife each had a separate property interest in Vulcan II. However, to allocate each party's separate interest, the district court had to determine the character of two related wire transactions sent by Wife's brothers to Wife for a sum of $156,000. The district court concluded that these wire transfers were payment for the purchase of an interest in Wife's percentage interest in Vulcan II. Wife challenges the sufficiency of the evidence for this conclusion on appeal.

Wife contended at trial, and now argues on appeal, that the wire transfers were a loan to the community and, therefore, should be reimbursed by the community. The district court, however, believed Husband's testimony that money was transferred to purchase a portion of Wife's percentage interest in Vulcan II. Husband's testimony was corroborated by testimony from Wife's brother and by a letter sent by Wife three

15

months after receipt of the wire transfer that assigned her brothers a percentage interest of her ownership interest in Vulcan II.

Wife's argument is again essentially an assertion that the district court should have given more weight to her testimony. As previously stated, "when there is a conflict in the testimony, we defer to the trier of fact." *Buckingham*, 1998-NMCA-012, ¶ 10. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. Resolving all disputes, as we must, in favor of the district court's decision, we conclude that substantial evidence from the record supported the district court's findings of fact, and its resulting conclusion that the $156,000 wired to Wife from her brothers was used to purchase a portion of Wife's percentage interest in Vulcan II.

**V.     Wife's Rule 1-060(B)(3) Motion**

When the district court explained its perception that Wife's Exhibit WW provided additional corroboration for Husband's testimony related to the Vulcan II investment, Wife asserted that her signatures on Exhibit WW were forged. However, Wife failed to present sufficient evidence to the district court to support her argument that the signatures were forgeries. Wife again raised the assertion that her signatures were forged after the district court entered judgment by filing a Rule 1-060(B)(3)

NMRA motion to set aside the judgment on the basis of fraud. On appeal, Wife requests that this Court remand the case to the district court for the purposes of hearing her Rule 1-060(B)(3) motion.

"Since the [district] court is powerless to grant relief under Rule [1-060(B)] during the pendency of an appeal, a party seeking such relief must file a motion in the appropriate appellate court requesting that the case be remanded to the [district] court for consideration of the Rule [1-060(B)] motion." *State ex rel. Bell v. Hansen Lumber Co.*, 86 N.M. 312, 313, 523 P.2d 810, 811 (1974). "A case will be remanded only where the showing reasonably indicates that, if leave is given, the [district] court might properly grant the Rule [1-060(B)] motion." *Id.* Wife has filed no such motion requesting remand by this Court. Additionally, Wife has not met her burden of producing evidence that the district court might properly grant her motion. As a result, we will not reach the merits of Wife's motion, nor will we remand this case to the district court for the limited purpose of hearing Wife's motion.

**V.  Interim Division of Income**

Wife contests the district court's findings of fact and conclusions of law related to the district court's decision to equalize interim division payments made by Husband to Wife throughout the course of divorce proceedings. We review this argument for substantial evidence. *See Olivas v. Olivas*, 108 N.M. 814, 820, 780 P.2d 640, 646 (Ct.

17

App. 1989) (upholding a property valuation for purposes of making an equal division of property because it was supported by substantial evidence). The district court acts within its discretion in allocating community assets and expenses. *See Bursum v. Bursum,* 2004-NMCA-133, ¶ 31, 136 N.M. 584, 102 P.3d 651 (holding that the district court did not abuse its discretion by the manner that it equalized community expenses).

The district court equalized the interim income payments because it found Wife's previous assertion, that she received no monthly income, was "disingenuous." We will not reweigh the district court's credibility determinations on appeal. *See Lahr*, 82 N.M. at 224, 478 P.2d at 552. Additionally, Wife has failed to provide this Court with any evidence to rebut the district court's equalization of its initial interim division of income. *See* Rule 12-213(A)(4); *see also Aspen Landscaping, Inc.*, 2004-NMCA-063, ¶¶ 28-29. Once Wife's 2008 income was disclosed at a later time, such a equalization was appropriate. As a result, substantial evidence supported the district court's findings and conclusions related to the interim division of income payments, and the district court's decision to equalize interim division of income payments was not an abuse of discretion.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the district court. Because

we determine that Wife is not entitled to any additional sums, we need not address her argument that she is entitled to a lien against Husband's separate medical practice to enforce payment of any such sums.

**IT IS SO ORDERED.**

                    _____

                    **TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**